| | | |
|---|---|---|
| ANGELA M. MILLER, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-15-1081 |
| KRAMON & GRAHAM PA, | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This is an employment discrimination action, in which Plaintiff Angela M. Miller's remaining claim alleges that she was terminated by her former employer, Defendant Kramon & Graham PA ("K&G"), based on her age in violation of the Age Discrimination in Employment Act ("ADEA"). ECF No. 8 at 11.[1] Presently pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 37. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion for Summary Judgment is granted.

## I. BACKGROUND[2]

Plaintiff, a Caucasian female, began working at K&G in 1986. ECF No. 40-7 ¶ 2. She left the firm in 1988 and returned in 1992, and began working full time at K&G in 1999. *Id.* Plaintiff was hired by K&G's Office Manager, Cathy Marks,[3] as a member of K&G's administrative team. *See id.*; ECF No. 40-1 at 2. For the entirety of her tenure at K&G, Plaintiff worked under

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[2] The facts relied on herein are either undisputed or viewed in the light most favorable to the Plaintiff, and are drawn from the evidence submitted by both parties.

[3] In her deposition, Marks is referred to as "Catherine Pries." For the sake of consistency, the parties refer to her as "Cathy Marks" throughout their briefing, which the Court adopts. *See* ECF No. 40 at 2 n.6.

Marks, and her work load was managed by Marks. ECF No. 40-1 at 2. On January 31, 2012, K&G terminated Plaintiff's employment. ECF No. 40-7 ¶ 11; ECF No. 40-2 at 18. At the time she was terminated, Plaintiff was 49 years old; she was subsequently replaced by a younger Caucasian female, who was 29 or 30 years old when she was hired. ECF No. 40-1 at 5; ECF No. 40-2 at 18. The parties disagree regarding the circumstances that led up to Plaintiff's termination, as discussed below.

In her affidavit, Plaintiff states that in January 2011, she was moved into a new office that was half the size. *Id.* ¶ 4. She did not receive a pay raise in 2011, and was told that she had "capped out" her salary. *Id.* ¶ 7. Plaintiff continued to follow up on the issue of her raise, and even emailed the managing principal, David Shuster, on December 23, 2011, asking to meet to discuss her salary. *Id.* ¶ 10. Rather than receiving a raise, Plaintiff was terminated on January 31, 2012; she states that "[n]o reason was given for [her] termination" and she was "never given an exit interview." *Id.* ¶ 11. Plaintiff states that she never received any negative feedback regarding her work performance, and was never given an evaluation at all. *Id.* ¶¶ 9, 12. This fact was confirmed by Marks in her deposition, who explained that they "never did written evaluations for anyone." ECF No. 40-2 at 13. In fact, Plaintiff attests to a number of instances in which she received positive feedback regarding her work. *See* ECF No. 40-7 ¶ 9 (attesting that two attorneys and two principals told her that she had done a good job on work assignments). Plaintiff believes that she was fired "based on [her] age because [she] was replaced by a less experienced" and younger "staff person." *Id.* ¶ 14.

The evidence submitted by K&G paints a different picture. Multiple K&G employees testified or stated that Plaintiff was terminated because of concerns with her workplace attitude and performance. *See, e.g.*, ECF No. 40-1 (K&G interrogatory responses, stating that "Plaintiff

was terminated due to her inability to cooperate with coworkers and others, insubordination, and because her conduct and demeanor were detrimental to the firm."); ECF No. 40-2 at 9 (Marks testifying that Plaintiff was terminated because "she was no longer keeping [K&G's] best interests at heart just by her demeanor, the way she treated staff"); ECF No. 37-14 (affidavit of managing principal Philip M. Andrews, describing how employees complained about Plaintiff's workplace attitude and job performance). On multiple occasions beginning in 2009, K&G principals and other employees complained about Plaintiff's behavior in the workplace and her attitude towards other employees and her responsibilities. In her deposition, Marks testified that in 2009 she began receiving verbal complaints from principals regarding Plaintiff. ECF No. 37-4 at 5. Between five and ten principals complained that Plaintiff "was very curt and very rude" and that there "were some disruptions with the way she communicated with other staff members." *Id.* at 5–6.

K&G points to several instances in which Plaintiff either behaved inappropriately in the workplace, failed to adequately complete work assignments, or both. One of the principals, Geoffrey Genth, submitted an affidavit describing how Plaintiff "spent an excessive amount of time on personal phone calls throughout the workday." ECF No. 37-5 ¶ 2. The calls were "personal in nature and had nothing to do with her work." *Id.* These calls "were rambling," "would often extend for more than thirty minutes per call" and often "began right after she reported to work in the morning." *Id.* Genth found these calls to be "distracting" and "was aware that other attorneys and assistants were also distracted by them." *Id.* at 3. On January 26, 2012, Andrew Jay Graham emailed the managing principal, David Shuster, and complained that

> Something has to be done about [Plaintiff]. For months if not years she has been talking on the phone about personal things, having nothing to do with her work, endlessly and in a way that is both annoying and distracting to those of us who are working. Geoff has mentioned the problem in the past. . . . I have the distinct impression that the other

3

assistants are also annoyed by her attitude toward her work, if she has any to do, and her strange set of priorities. I don't like to get anyone in trouble, but the current situation is truly absurd. [Plaintiff] is being paid to chat with her friends on the phone.

ECF No. 37-7. In his affidavit, Genth further describes how on one occasion in late 2011 or early 2012, he needed Plaintiff to validate a "distinguished client['s]" parking ticket after "a lengthy meeting." ECF No. 37-5 ¶ 8. At the time, Plaintiff was "in the middle of a casual, personal phone conversation." *Id.* In response to Genth's request that Plaintiff validate the parking ticket, Plaintiff "waved [him] off" with "a dismissive hand gesture." *Id.* Genth found this "unacceptable," "unprofessional, inappropriate, and offensive" and reported the incident to Shuster and Marks. *Id.*

On another occasion, Plaintiff also chose to ignore the requests of her office supervisors. On January 12, 2012, Marks sent an email to the support staff with a subject line of "Purple Friday." ECF No. 37-8. Marks explained that an employee had asked "whether everyone can wear Ravens' clothing tomorrow." *Id.* at 1.[4] In response to the request, Marks clarified that while employees were "free to wear purple" (the team color of the Baltimore Ravens), employees were not permitted to wear "Ravens jerseys, t-shirts, etc." *Id.* Rather than adhere to the policy, Plaintiff arrived at K&G the next day wearing a t-shirt with a Baltimore Ravens logo on it. *Id.* Furthermore, Plaintiff then complained about the dress code policy and Marks' email publicly to other employees. ECF No. 40-2 at 12. Marks found this behavior objectionable. *Id.*

In addition to her workplace demeanor, K&G points to two instances in which principals were highly dissatisfied with Plaintiff's work. On one occasion, Marks blamed Plaintiff for an incident that occurred at K&G's Christmas party. Marks and Plaintiff worked together to select a parking lot for the staff to park at, for which the firm would hand out prepaid parking vouchers.

---

[4] The Court takes judicial notice of the fact that the Baltimore Ravens were playing against the Houston Texans in the first round of the playoffs of the National Football League that weekend. *See* "Post Season 2011," NFL.com, http://www.nfl.com/schedules/2011/POST (last accessed Jan. 26, 2018).

4

ECF No. 40-2 at 19. According to Marks, "[Plaintiff] had done the research" into the parking lot, and then Marks "did a memo telling about how the parking would work for this party." *Id.* Marks sent the memo to Plaintiff to confirm the details, which Plaintiff did. *Id.* Once they arrived at the party, Marks pointed out to Plaintiff that the vouchers did not match the garage that Marks had parked at. *Id.* Rather than review the tickets, Plaintiff simply retorted that "you're at the wrong lot," and continued to give out the same vouchers to employees. *Id.* It turned out that the lot described in the memo— which Plaintiff confirmed for Marks—did not match the vouchers that Plaintiff obtained; this resulted in a significant "backup at the lot" at the end of the night, with "people trying to get out without proper documentation." *Id.*

On another occasion, Plaintiff failed to complete a work assignment for a principal in a timely manner. In May 2011 the principal, Cynthia A. Berman, asked Plaintiff to retrieve and deliver a file for her. ECF No. 37-9. Plaintiff failed to accomplish this task in a timely manner, and Berman had to ask another employee to retrieve the file. *Id.* This was brought to the attention of the managing principal. ECF No. 37-6 at 4–5.

Finally, on January 31, 2012, Plaintiff was terminated from K&G. ECF No. 40-2 at 18. Although some previous employees who were terminated had been permitted to continue working at K&G while they sought new employment, Plaintiff's termination was effective immediately. In his affidavit, Philip M. Andrews, K&G's chairman at the time Plaintiff was terminated, explained that this occurred because Plaintiff "had access to sensitive accounting and personnel information," and "the Firm was concerned that she would continue to conduct herself unprofessionally and continue to be a distraction." ECF No. 37-14 at 3. While K&G did not allow her to continue working while she sought new employment, K&G did offer Plaintiff a severance payment "to assist her financially during her search for work elsewhere." *Id.*

After her termination, Plaintiff brought the pending claim against K&G, filing her initial Complaint on April 14, 2015, ECF No. 1, and amending it on October 13, 2015, ECF No. 8.[5] In her Complaint, Plaintiff alleged that K&G was liable for age discrimination under the Age Discrimination in Employment Act ("ADEA") (Count I), race discrimination under Title VII (Count II), race discrimination under 42 U.S.C. § 1981 (Count III), age discrimination under the Maryland Fair Employment Practices Act ("MFEPA") (Count IV), and race discrimination under the MFEPA (Count V). ECF No. 14. On August 16, 2016, the Court granted in part K&G's Motion to Dismiss, ECF No. 21, dismissing Counts II, IV and V. ECF No. 25. Following discovery, K&G moved for summary judgment on the remaining counts, ECF No. 37, which Plaintiff opposed, ECF No. 40. In her opposition, Plaintiff withdrew her claim of race discrimination (Count III). ECF No. 40, n.1. As such, the only remaining claim from Plaintiff's Complaint is Count I, her claim of age discrimination under the ADEA, which is discussed below.

## II. STANDARD OF REVIEW

"Under [Federal Rule of Civil Procedure] 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving

---

[5] Plaintiff's Amended Complaint was subsequently administratively closed by Judge Motz on November 6, 2015, for failure to properly effectuate service. ECF No. 12, ECF No. 13. Plaintiff re-filed her Complaint on November 15, 2015. ECF No. 14.

party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. Importantly, at the summary judgment stage, it is not the Court's function to weigh the evidence but simply to decide if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). A dispute of material fact is genuine if the conflicting evidence creates "fair doubt," *Cox v. Cnty. Of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001), such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Nevertheless, a "mere scintilla of proof" is not enough to defeat a motion for summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003) (citing *Anderson*, 477 U.S. at 252). To defeat the motion, the party opposing summary judgment must submit evidentiary materials showing facts on the basis of which the finder of fact could reasonably decide the case in its favor. *Anderson*, 477 U.S. at 252. If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Id.*

## III. DISCUSSION

K&G argues that the Court should grant summary judgment in its favor because the evidence demonstrates that Plaintiff was terminated for her workplace demeanor, performance and insubordination, and not because of her age. ECF No. 37-1 at 16. On the other hand, Plaintiff argues that the Court should deny K&G's motion because Plaintiff was meeting K&G's expectations regarding her performance, she was never warned or evaluated regarding her conduct, and K&G failed to follow their own employment policy. ECF No. 40 at 11.

"The ADEA broadly prohibits arbitrary discrimination in the workplace based on age." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120 (1985) (citing *Lorillard v. Pons*, 434 U.S. 575, 577 (1978)) (internal citation omitted). There are two methods by which the Plaintiff may prove her employer's discrimination: (1) "through direct or indirect evidence of intentional discrimination," or (2) "through circumstantial evidence under the [burden-shifting framework of] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Pilger v. D.M. Bowman, Inc.*, 833 F. Supp. 2d 489, 494 (D. Md. 2011), *aff'd*, 521 F. App'x 307 (4th Cir. 2013). Because Plaintiff has not adduced direct or indirect evidence of intentional discrimination, she must proceed by using the second method.

Under this second method, a plaintiff must first allege a *prima facie* case of age discrimination. "To plead adequately a claim of employment discrimination under the ADEA, a plaintiff typically must allege: '(1) [s]he is a member of a protected class—that is, 40 years or older; (2) [s]he suffered an adverse employment action; (3) [s]he was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or [s]he was replaced by a substantially younger person.'" *Royster v. Gahler*, 154 F. Supp. 3d 206, 232 (D. Md. 2015) (quoting *Bodkin v. Town of Strasburg, Va.*, 386 Fed.App'x. 411, 413–14 (4th Cir.2010) (per curiam)).

Once the plaintiff has established a *prima facie* case under the ADEA, the "burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Texas Dept. of Commun. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802–04). "The employer is not required to prove absence of a discriminatory motive, but merely articulate some legitimate reason for its action." *E.E.O.C. v. Western Electric Co.*, 713 F.2d 1011, 1014 (4th Cir. 1983) (citing *Smith v.*

*University of North Carolina,* 632 F.2d 316, 332-33 (4th Cir.1980)). It is simply a burden of production not of persuasion. *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1992). Because the burden is one of production and not persuasion, the court's analysis "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993).

If the defendant is successful in carrying this burden, the plaintiff must demonstrate by a preponderance of the evidence that defendant's proffered reasons were a pretext for discrimination. *Burdine,* 450 U.S. at 252–53. That is, the plaintiff must show that her employer's decision to terminate the plaintiff was based upon age or that the stated reason is simply "unworthy of credence." *Id.* at 256. The plaintiff always bears the "ultimate burden" of proving that the employer intentionally discriminated against her, *id.,* which may require "more than simply show[ing] the [employer's] articulated reason is false," *Laber v. Harvey,* 438 F.3d 404, 430–31 (4th Cir.2006). *See also Reeves,* 530 U.S. at 138, 120 S.Ct. 2097 ("Certainly there will be instances whe[n], although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.").

For purposes of their Motion for Summary Judgment, K&G concedes that Plaintiff meets the first, second, and fourth elements of her *prima facie* ADEA claim; that is, she was over 40 years old, was terminated, and was replaced by a substantially younger person. ECF No. 37-1 at 16. Nonetheless, K&G argues that they are entitled to summary judgment for two reasons: (1) that Plaintiff cannot prove a *prima facie* case of age discrimination because she cannot show that she was meeting K&G's legitimate expectations; and, (2) that even if she can prove a *prima facie* case, K&G has proffered a legitimate non-discriminatory reason for firing her—her poor work performance—which she cannot show was pretextual. *See* ECF No. 41 at 2. As the Court has

previously noted, where an employer's stated reason for terminating a plaintiff was poor work performance, "the evidence with respect to these two issues overlaps, and the Court will accordingly consider them together." *Davis v. Nissan N. Am., Inc.*, No. GJH-14-3166, 2016 WL 4059346, at *7 (D. Md. July 27, 2016), *aff'd*, 693 F. App'x 182 (4th Cir. 2017) (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515-16 (4th Cir. 2006) (noting the flexibility of the *McDonnell Douglas* framework and finding "no impermeable barrier that prevents the employer's use of such evidence [of an employee's unsatisfactory work performance] at different stages of the *McDonnell Douglas* framework"); *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (noting that there is "a great deal of overlap" with respect to the factual inquiry regarding whether an employee was fulfilling the legitimate performance expectations of the employer and whether the reasons given by the employer for the discharge are pretextual). Thus, the Court first addresses whether the record indicates that Plaintiff's work performance was not meeting the expectation of K&G—to determine whether she has made a *prima facie* case and whether K&G can proffer a legitimate non-discriminatory reason for firing her—and then addresses whether Plaintiff can show that K&G's proffered reason for terminating her was pretextual.

A. Plaintiff's Workplace Performance

K&G argues that they are entitled to summary judgment because there is no genuine issue of fact regarding whether Plaintiff was meeting K&G's legitimate expectations at the time she was terminated; as such, she cannot make out a *prima facie* case of discrimination, and K&G had a legitimate non-discriminatory reason to terminate her. ECF No. 37-1 at 16. Plaintiff counters that the evidence presented by K&G is "not legitimate" because the conduct complained of "occurs regularly in the workplace" and that she was "never . . . warned or

evaluated for this conduct." ECF No. 40 at 11. Plaintiff also presents evidence that she received verbal praise from two attorneys in September 2010, and never received any performance evaluation from K&G, in violation of their Office Manual. *Id.* at 3.

There is no genuine dispute of material fact that Plaintiff was not meeting K&G's legitimate expectations at the time she was terminated, and that she was terminated based on her performance. It is reasonable for K&G to expect that its administrative assistants will be generally polite to the attorneys, diligent in their work, and not disruptive or insubordinate in the workplace. The record demonstrates that on multiple occasions leading up to Plaintiff's termination she did not meet these expectations. Plaintiff was curt and rude to K&G staff, blatantly disregarded and complained about K&G office policies, engaged in lengthy, loud personal phone calls while at work, and on multiple occasions failed to execute work tasks satisfactorily. K&G submits the affidavits and depositions of management along with emails written to and regarding Plaintiff prior to her termination, all of which indicate that Plaintiff was terminated for her workplace performance and attitude. *See, e.g.*, ECF No. 37-4 at 14 (deposition of Marks, explaining reasons for terminating Plaintiff); ECF No. 37-5 at 3 (K&G principal attesting that Plaintiff's "conduct and attitude were incompatible with a well-functioning professional office"); ECF No. 37-6 at 11 (deposition of K&G managing principal, stating that "the way that [Plaintiff] had been treating people made it no longer a tolerable situation"). While it may be appropriate at times to view the assertions of the allegedly biased supervisor's assessment with caution, where, as here, the official's account is "corroborated not only by [her] contemporaneous notes throughout this time, but by [her] e-mails with [the terminated employee] and [her] own supervisors prior to the termination," courts will accept the legitimate non-discriminatory reason for termination. *Davis v. Mabus*, 162 F. Supp. 3d 467, 476 (D. Md.

11

2016). The affidavits and depositions submitted by K&G corroborate each other, and are supported by contemporaneously-created emails. *See, e.g.*, ECF No. 37-7 (January 26, 2012, email between K&G principals complaining about Plaintiff's loud, personal phone calls, and stating that "[s]omething has to be done about [Plaintiff]"); ECF No. 37-8 at 1 (January 13, 2012, email from Marks to Plaintiff, admonishing her for her failure to follow K&G's dress code). No reasonable jury looking at the evidence in the record could find that the Plaintiff was meeting her employer's legitimate expectations or that Defendants did not have a non-discriminatory basis for the termination.

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff points to a comment made by Genth that Plaintiff's telephone conversations were "pretty common." ECF No. 40 at 11. Plaintiff interprets this as implying that other employees also commonly conducted loud, personal telephone conversations. Given the context and tone of Genth's email, however, the Court finds it to be beyond dispute that Genth meant that such conversations were common for *Plaintiff*, not for employees generally. As such, there is no evidence on the record, as Plaintiff asserts, that the conduct she was fired for "occurs regularly in the workplace." ECF No. 40 at 11.

Second, Plaintiff argues that she was never "warned or evaluated for" her conduct, nor received a performance review or exit interview. ECF No. 40 at 11. However, K&G employees did in fact warn her or express displeasure regarding her conduct. *See, e.g.*, ECF No. 37-5 at 2–3 (Genth explaining that he expressed his displeasure to Plaintiff regarding her behavior); ECF No. 37-8 (in email to Plaintiff, Marks reprimands Plaintiff for ignoring the office dress code); ECF No. 37-9 (in email to Plaintiff, attorney reprimands Plaintiff for work performance). Furthermore, while K&G may not have strictly followed its employee manual in failing to give Plaintiff a performance review or exit interview, there is no evidence that she was treated any

differently from other employees; in fact, Marks testified that they did not conduct written performance reviews for any employees. ECF No. 40-2 at 13.

Third, that two attorneys gave her compliments is not itself enough to counter the evidence presented by K&G, particularly where those compliments occurred more than a year prior to Plaintiff's termination. *See Pilger v. D.M. Bowman, Inc.*, 833 F. Supp. 2d 489, 495 (D. Md. 2011), *aff'd,* 521 F. App'x 307 (4th Cir. 2013) (reasoning that a positive performance review was not sufficient to "show that an employee was meeting expectations" where "eight months passed between the . . . performance review and [the plaintiff's] . . . termination").

Having considered the evidence on the record, Plaintiff has not showed that she was meeting K&G's performance expectations for her. The record shows that she was rude, dismissive and curt to employees, and was a disruption to the workplace. Therefore, Plaintiff has not made a *prima facie* case, and K&G is entitled to summary judgment.

### B. No Evidence of Pretext

Even if Plaintiff had been able to make out a *prima facie* case of age discrimination, she would not be able to show that K&G's nondiscriminatory reason for firing her was pretextual, and that she was ultimately terminated because of her age. *See Holland v. Washington Homes Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). To show that the stated reason is pretextual, the plaintiff must show that the employer's reasons for terminating the plaintiff were false, and that the reasons were a pretext for age discrimination. *See Davis v. Mabus*, 162 F. Supp. 3d at 477. *See also Sagar v. Oracle Corp.*, 914 F. Supp. 2d 688, 694 (D. Md. 2012), *aff'd,* 523 F. App'x 999 (4th Cir. 2013) ("To support a finding of pretext, a plaintiff must demonstrate that the employer's articulated reasons have no basis in fact or that its reasons were not the 'real' reason for the adverse employment action.")

13

In the face of K&G's legitimate nondiscriminatory reason, Plaintiff is unable to demonstrate that the reason given by K&G is false or that the real reason for terminating her was her age; as such, she cannot show that K&G's reason was pretextual. Notably, Plaintiff does not challenge the veracity of K&G's reasons for termination; that is, she does not deny that she acted rudely or curtly in the workplace, acted dismissively towards Genth, engaged in loud, lengthy personal telephone conversations in the workplace, or violated and complained about the office dress code policy. Plaintiff's main contention is that she was never formally reprimanded regarding her behavior, and that K&G did not follow their own employment policies in regularly reviewing her performance and terminating her.[6] *See* ECF No. 40 at 11 (Plaintiff arguing that "under current law, when an employee violates its own employment policy it is sufficient to raise an inference of discrimination."). However, the cases cited by Plaintiff—which are all out-of-circuit cases—indicate that K&G's failure to follow its own policies is not enough, by itself, to show that K&G's legitimate nondiscriminatory reason was pretextual. In *Lathram v. Snow*, 336 F.3d 1085, 1093–94 (D.C. Cir. 2003), the D.C. Circuit reasoned that an agency's departure from its normal process "*can* justify an inference of discriminatory motive." (emphasis added). Similarly, in *Johnson v. Lehman*, 679 F. 2d 918, 922 (D.C. Cir. 1982), the D.C. Circuit noted that, while it may be a relevant factor, "a finding of a failure on the part of the prospective employer to follow its own regulations and procedures, alone, may not be sufficient to support a finding of . . . discrimination." Here, while Plaintiff claims that she was not given a regular performance review or an exit interview in violation of K&G's employment policy, there is no basis to suggest that this indicates that K&G acted discriminatorily in firing Plaintiff.

---

[6] Plaintiff also claims that the type of loud, personal phone calls "occurs regularly in the workplace" and that Genth described her conduct as "pretty common" in an email. ECF No. 40 at 11. Taking this comment in context, ECF No. 40-4 at 1, it is clear that Genth meant that *Plaintiff* commonly made these types of calls. This out-of-context comment does not indicate that K&G's reason for terminating Plaintiff was pretextual.

Further undermining Plaintiff's argument regarding pretext is the fact that employees similar in age to Plaintiff were hired and continue to be employed by K&G. *See* ECF No. 37-13 ¶ 3 (affidavit of K&G managing principal, attesting that since Plaintiff's termination, the firm hired 15 administrative employees, and 7 of them were older than Plaintiff was when she was terminated); *id.* (attesting that as of July 3, 2017, the average age of the 25 administrative employees at K&G was 51). *Cf. Sagar v. Oracle Corp.*, 914 F. Supp. 2d 688, 696 (D. Md. 2012), *aff'd*, 523 F. App'x 999 (4th Cir. 2013) ("Further undermining to [Plaintiff's] attempt to show pretext is the simple fact that, although he was 60 years of age at the time of his termination, [another employee], who was 62, was retained and continues to work for [defendant]."); *Richter v. Hook–SupeRx, Inc.*, 142 F.3d 1024, 1032 (7th Cir.1998) (holding that retaining employees comparable in age to the plaintiff weakened an inference of discrimination in employment termination case).

Plaintiff cites to *Norman v. Vilsack*, 76 F. Supp. 3d 247 (D.D.C. 2014) as a factually similar case. ECF No. 40 at 11–12 ("the employer offered no corroborating or contemporaneous proof of the Plaintiff's performance issues, and [that court found] that a jury could deem the lack of evidence pretext for discrimination. . . . The same is the case in here."). K&G counters, however, that *Norman* demonstrates "precisely why summary judgment is appropriate here." ECF No. 41 at 4. In *Norman*, the defendant, an African-American woman, brought a motion for summary judgment and offered a number of non-discriminatory reasons for ending the plaintiff's employment. 76 F. Supp. 3d at 248. The plaintiff introduced evidence that "cast[] doubt on [defendant's] explanations for [plaintiff's] termination and evidence that indicates discriminatory practices or attitudes on the part of [plaintiff's] supervisor." *Id.* at 251. In *Norman*, the plaintiff went through and introduced genuine questions of fact regarding each reason provided by the

defendant for terminating the plaintiff. *Id.* at 250–253. Furthermore, the plaintiff introduced evidence that defendant acted towards her in a condescending manner, and that the defendant acted similarly to another African-American employee. *Id.* at 253. Based on this, the court determined that the plaintiff had "raised genuine questions of material fact regarding the truthfulness of the [defendant's] principal and other supporting rationales for terminating her," and showed that there was "no corroborating evidence of performance issues or counselling" regarding the plaintiff's "work quality." *Id.* at 252.

Here, to the contrary, Plaintiff does not dispute the underlying reasons provided by Defendant, and Defendant has introduced corroborating evidence of these performance issues. Neither in her affidavit nor in the other evidence submitted does Plaintiff contest that she engaged in loud, personal phone calls at work, acted rudely or dismissively to principals, violated and complained about the office's dress code, or that she failed to meet the expectations of her supervisors regarding the office holiday party. Furthermore, Plaintiff has not introduced evidence that defendants acted condescendingly towards her or other employees based on her age. Finally, the evidence presented indicates that K&G employees made their concerns regarding her performance known to Plaintiff. *See* ECF No. 37-8 at 1 (email from Marks informing Plaintiff that she had violated the office dress code); ECF No. 37-3 ¶ 8 (statement by Genth that he expressed to Plaintiff that he was "dissatisfied with how she handled the situation"); ECF No. 37-7 (email from Berman admonishing Plaintiff for failing to retrieve a file in a timely manner).

Thus, *Norman* is not on point. Plaintiff has not demonstrated that the legitimate nondiscriminatory reason offered by K&G is pretextual. Therefore, even if Plaintiff had been able to make a *prima facie* age discrimination case, she has not sufficiently opposed K&G's

proferred legitimate non-discriminatory reason for termination as required under the *McDonnell Douglas* burden-shifting analysis. Thus, K&G is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, K&G's Motion for Summary Judgment, ECF No. 37, is hereby granted. A separate Order shall issue.

Date: February ___, 2018

GEORGE J. HAZEL
United States District Judge